**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHNNY M. BARTON, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:12CV1577 NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.**[1] | ) | |

## MEMORANDUM AND OPINION

This is an action under Title 42 U.S.C. § 405 (g) for judicial review of the final decision of the Commissioner denying the application of Johnny M. Barton, Jr. (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. § 1381 et seq. Plaintiff has filed a brief in support of the Complaint. Doc. 18. Defendant has filed a brief in support of the Answer. Doc. 25. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). Doc. 27.

### I.
### PROCEDURAL HISTORY

Plaintiff filed his application for DIB and SSI, alleging a disability onset date of July 1, 2008. Tr. 102-11. Plaintiff's applications were denied and he requested a hearing before an Administrative Law Judge (ALJ). Tr. 44-54. In April 2011, a hearing was held before an ALJ. Tr. 19-39. In a decision dated May 19, 2011, the ALJ found Plaintiff not disabled. Tr. 10-14.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

Plaintiff filed a request for review with the Appeals Council, which denied Plaintiff's request on June 28, 2011. Tr. 1-3. As such, the ALJ's decision is the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial

evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.


Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801;

Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

At the hearing, Plaintiff's attorney stated that Plaintiff was unable to engage in full time work "due to primarily physical impairments with his back." Tr. 23. Plaintiff, who was 50 years old, testified that he no longer did yard work; after he helped a friend fix a van, he had to lay down on the couch; he last worked in a machine shop; he had memory problems since an automobile accident several years prior to the hearing; he could not "breath work nothing" because of his "COPD"; he had severe back pain, which limited his ability to walk and lift; he could not lift 10 pounds frequently; he could stand for 15-20 minutes; he could not sit in the same spot for over 30-45 minutes at a time without having to move because his back would start

hurting; he could not grocery shop and carry shopping bags and could no longer help with yard work; at the time of the hearing, he smoked less than a half pack of cigarettes a day; he was going to take a smoking cessation class; for the year prior to the hearing he no longer "g[ot] souped up drunk every night" and only drank with "one or two with a friend once or twice a week"; he did not have side effects from his medications; he would not have any trouble with back pain working as a truck driver if he could get a job where he did not have to help load or unload trucks; at the time of the hearing, he drove a pickup truck; he had never seen a truck driver job that did not require having to help with loading or unloading; when he worked at Trinity Trucking he drove a "Semi," which was a flat bed, and did not have to do any lifting, although he had to "pull some chains over it and tighten them down"; when he worked as a welder in 2006 for a year and a half, he lifted 15-25 pounds and was on his feet a lot; and when he worked as a welder, he built frames for railroad cars. Tr. 24-36.

A VE testified that Plaintiff's job as a truck driver was normally performed at the medium level, but it was "light per [] claimant." The VE also testified that production line welding is normally medium unskilled work, and that a person with Plaintiff's RFC could not perform Plaintiff's past work as a truck driver or welder as they were normally performed but that such a person could perform such jobs "per claimant." Tr. 35-37. The VE finally testified that there was also other work at the light unskilled level in the national economy which a person with Plaintiff's RFC could perform, such as counter attendant and delivery driver, and that these jobs existed in substantial numbers. Tr. 37.

The ALJ found Plaintiff met the insured status requirements through December 31, 2012; Plaintiff had not engaged in substantial gainful activity since July 1, 2008, his alleged onset date; Plaintiff had the severe impairments of emphysema and lower back pain; he did not have an

impairment or combination of impairments that met or medically equaled a listed impairment; he had the RFC to perform light work as defined in the Act, and could only occasionally climb stairs and ladders, kneel, stoop, crouch, crawl, balance, be exposed to cold extremes, or work with hazards;[2] Plaintiff was capable of performing his past relevant work as a welder or truck driver; and, therefore, Plaintiff was not disabled.

Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to give proper weight to the opinion of consulting examiner, Amy Marty, Ph.D., in that the ALJ failed to include limitations in Plaintiff's RFC regarding Plaintiff's mental disorders; the ALJ failed to give proper weight to the opinion of Stanley London, M.D., regarding Plaintiff's physical limitations; and the ALJ failed to make sufficient findings regarding Plaintiff's credibility and the credibility of Plaintiff's father. For the following reasons, the court finds Plaintiff's arguments without merit and that the ALJ's decision is supported by substantial evidence.

## A.    ALJ's Credibility Determination:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. '' 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should

_____

[2] The Regulations define light work as >involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds.@ 20 C.F.R. ' 404.1567(b). Additionally, A[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.@ Social Security Regulation (SSR) 83-10, 1983 WL 31251, at *6.

be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff=s credibility, this is not necessarily a basis to set aside an ALJ=s decision where the decision is supported by substantial evidence.  See Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (AThe ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered.@); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  In any case, A[t]he credibility of a claimant=s subjective testimony is primarily for the ALJ to decide, not the courts.@  Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  AIf an ALJ explicitly discredits the claimant=s testimony and gives good reason for doing so, [a court] will normally defer to the ALJ=s credibility determination.@  Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).  See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, Plaintiff suggests the ALJ failed to give proper weight to "third party opinions."

Doc. 18 at 15. Indeed, Plaintiff's girlfriend stated, in the "remarks" section of the function

report, that Plaintiff could not remember "a lot of things that happen." Tr. 149. Also, a woman

who said she lived with Plaintiff from December 12, 2010, to April 2011, stated, in a letter, that

she observed Plaintiff have to sit after getting the mail as he would be short of breath, and that

Plaintiff did not remember what he had said. Tr. 167. Another individual wrote, in a note, that

he had known Plaintiff for about 30 years and that Plaintiff had gone from doing "just about any

thing to doing nothing like he use to"; he coughed a lot and had trouble "getting his breath"; and

his memory had not been the same since he had been in a bad auto accident. Tr. 168. While the

Eighth Circuit Court of Appeals has frequently criticized the failure of an ALJ to consider

subjective testimony of the family and others and while such testimony must be considered, no

case directs that reversal is appropriate where an ALJ fails to specifically do so when he has

discredited the testimony of the claimant. See e.g., Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir.

1988). Smith v. Heckler, 735 F.2d 312, 317 (8th Cir. 1984). Moreover, the ALJ may discount

corroborating testimony on the same basis used to discredit Plaintiff's testimony. See Black v.

Apfel, 143 F.3d 383, 387 (8th Cir. 2006). Thus, where the same evidence that the ALJ relied

upon when discrediting the testimony of Plaintiff would have been the same evidence which

would have supported discrediting the testimony of Plaintiff's girlfriend or others, the ALJ's

failure to address or discount such testimony is Αinconsequential.@ Young v. Apfel, 221 F.3d

1065, 1068 (8th Cir. 2000). See also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996)

(holding that an ALJ's decision need not be reversed where he failed to consider testimony which

would not have had an effect on the outcome of the case). Additionally, although Plaintiff's live-

in girlfriend was not his spouse, an ALJ may discount the testimony of a spouse because she has

a financial stake in the outcome of the claimant=s case.  See Choate v. Barnhart, 457 F.3d, 865, 872 (8th Cir. 2006).  Finally, to the extent the ALJ did not mention evidence of record submitted by third parties, the ALJ's failure to do so does not indicate that such evidence was not considered.  See Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) (AThe fact that the ALJ=s decision does not specifically mention the [particular listing] does not affect our review.@); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).  As such, the court finds that to the extent the ALJ did not specifically address evidence submitted from Plaintiff's girlfriend or others, such a failure does not warrant reversal and/or remand.

Second, consistent with the case law and Regulations, the ALJ considered that the objective medical evidence did not establish impairments to the severity alleged by Plaintiff.  See 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (in assessing credibility, ALJ should consider objective evidence); Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (absence of objective medical evidence to support complaints is factor for ALJ to consider, although ALJ may not discount claimant's subjective complaints solely because they are unsupported by objective medical evidence); Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004); Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993) (ALJ properly discounted claimant=s complaints of pain when medical evidence failed to establish significant back problem).  As considered by the ALJ in regard to Plaintiff's alleged physical impairments, the impression from January 2009 x-rays was "no evidence of active pulmonary disease" and no rib fracture, pleural hematoma, pneumothorax, lung contusion, or other abnormality.  Tr. 205.  Stanley London, M.D., who saw Plaintiff for a consultive examination, on October 22, 2009, reported that Plaintiff was well-developed and nourished and did not appear to be in any physical distress until he started moving; he had no clubbing, cyanosis, or edema in his extremities; he walked "fairly normally";

he could squat and heel and toe walk; he got on and off the examination table with "some painful difficulty"; he was tender in his low back but there was "no real spasm"; and his flexibility was "90 degrees with ease." Tr. 214-15. Dr. London also reported that Plaintiff's lower extremity muscle strength was normal, and he could fully extend his hand, and make a fist, and his fingers could be opposed. Tr. 222-23. X-rays of the lumbosacral spine ordered by Dr. London showed degenerative joint disease; "reasonably good" alignment; fusion with degenerative changes on the left sacroiliac join; and minor degenerative changes through the lumbar spine and mild narrowing at L5-S1. Tr. 216.

On October 22, 2009, Plaintiff had a consultive examination with Dr. Marty. Dr. Marty reported that Plaintiff presented with complaints of back pain, depression, and memory loss and forgetfulness, and that, upon examination, Plaintiff had a "mildly depressed" mood and blunted affect; he was spontaneous, coherent, relevant, logical, attentive, polite, and answered all questions; his speech was normal and no tangential thoughts, flight or ideas or preservation were observed; and he had no perceptual distortions or delusions; and testing showed "overall, no significant cognitive impairments." Dr. Marty also reported that Plaintiff had a Global Assessment of Functioning (GAF) of 75.[3] Dr. Marty's diagnosis included alcohol dependence, in full remission, and adjustment disorder, with depressed mood. Tr. 219-21.

_____

[3] Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32. See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] ... reflects >some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.") (quoting Kohler v. Astrue, 546 F.3d

Further, pursuant to a December 10, 2009 consultive physical examination, Barry Burchett, M.D., reported Plaintiff denied his pain radiated into his lower extremities; Plaintiff said he smoked two and a half packs of cigarettes a day and used alcohol regularly; Plaintiff had no history of shortness of breath, coughing, or chest pain; Plaintiff's visual fields were normal; he ambulated with a normal gait; he appeared stable at station and comfortable in the supine and sitting positions; his mood, orientation, and thinking seemed appropriate; his recent and remote memory for medical events was good; he was not short of breath with exertion or lying flat; his heart had a regular rate, with nor murmur; there was no evidence of peripheral vascular insufficiency; his abdomen was non-tender; range of motion in his hands was normal; his legs and cervical spine were not tender; there was no evidence of muscle spasm in the cervical spine; his dorsolumbar spine had normal curvature; there was no evidence of parvertebral muscle spasm; he was able to stand on one leg at a time without difficulty; he had no hip joint tenderness or swelling; and he was able to tandem gait and squat without difficulty. In summary, Dr. Burchett reported that Plaintiff's straight leg raising was negative; the range of motion in his spine was normal; he had no tenderness in his back; and there was no evidence of compressive neuropathy in the lower extremities. Tr. 234-37.

On September 9, 2010, Plaintiff presented to Nurse Practitioner Sandy Mitkos for a psychiatric referral. Nurse Mitkos reported, on examination, no abnormalities in regard to Plaintiff's head, eyes, neck, heart, abdomen, back, and musculoskeletal system. Tr. 254. Although Nurse Mitkos diagnosed Plaintiff with memory loss and anxiety, she was not an acceptable medical source. See Lacroix v. Barnhart, 465 F.3d 881 (8th Cir. 2006) (medical opinions are defined as statements from physicians, psychologists, and other acceptable medical

---

260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)) (alterations in original).

sources; nurse practitioners and therapists are not acceptable medical sources as defined in the Regulations) (citing 20 C.F.R. '' 404.1513(a), 416.913(a)).

When Plaintiff presented to Thomas Spence, M.D., on January 24, 2011, for complaints of shortness of breath, Dr. Spence reported that Plaintiff continued to smoke; he denied sputum production, chest pain, and wheezing; his extremities were without tenderness; and pulmonary testing showed "well preserved lung function." Tr. 261. A chest x-ray ordered by Dr. Spence showed emphysematous COPD with osteopenia and no acute infiltrates. Tr. 263. When Plaintiff presented to Dr. Spence on February 7, 2011, Dr. Spence reported that Plaintiff continued to smoke, and, although Plaintiff's chest x-ray was consistent with COPD, pulmonary-function testing was "remarkably good" and Plaintiff denied sputum production and chest pain or wheezing. Tr. 259. A February 7, 2011 x-ray showed no active pulmonary disease. As such, the court finds that substantial evidence supports the ALJ's discrediting Plaintiff's complaints regarding the severity of his impairments based on the objective medical evidence. The court finds that the ALJ properly considered that the objective medical evidence did not establish impairments to the severity alleged by Plaintiff, and that the ALJ's decision, in this regard, is based on substantial evidence.

Third, the ALJ considered Plaintiff's description of his daily activities in a November 2009 Function Report. In the Function report Plaintiff said he started his day by going outside and trying to "clean up [his] yard, then [] try[ing] to clean [his] trail[e]r"; after doing that he would sit down for "about a half hour or so, [and] then go back outside and try to work around [his] yard and . . . [his] vehicle"; after doing that he "straighten[ed] out [his] storage shed"; he took care of pets by filling "three feeders full of food and giv[ing] them water"; his live-in girlfriend helped him with his pets; he did not need reminders to take care of his personal needs and

grooming; he moved about fifteen minutes; he made repairs, which took him "pretty much all day," if his back did not prevent him from doing this; he went outside "all day long and sometimes at night"; he drove a car; went out alone, and shopped in stores; when shopping, he bought parts for his vehicles and for his house; he shopped "about 5 to 10 times a month for about 20 to 30 min. each time"; he could pay bills and count change, but could not "do the check book" because that task "need[ed] a memory"; he watched television and played games on the computer; he could no longer weld due to his back; and he talked to friends on the computer and on the telephone every day. Tr. 142-47.

While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). "Inconsistencies between [a claimant=s] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792. See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant=s daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of

benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff=s daily activities upon choosing to discredit his complaints of debilitating pain.

Fifth, consistent with the case law, the ALJ further considered Plaintiff's hearing testimony regarding his limitations and his description of what he could do in the Function Report, and noted that there "was no discernable rational for the decompensation of [Plaintiff's] condition." The ALJ concluded, therefore, that Plaintiff's allegations regarding the "pervasiveness of his impairments and the limiting effects of them" was not fully credible. Tr. 13. See Eichelberger, 390 F.3d at 589 (ALJ may disbelieve claimant's subjective complaints of pain because of "inherent inconsistencies or other circumstances"). The court also notes that Plaintiff told Dr. London, in October 2009, that he could stand for 4 hours and sit 4-5 hours. Tr. 214. Dr. Marty reported, in October 2009, that Plaintiff grocery shopped, completed household chores, and got out of the house every day and went places with his girlfriend. Tr. 220. The court has addressed the substance and content of Plaintiff's medical records above. As such, the court further finds that substantial evidence supports the ALJ=s decision that there is no discernable rational for the decompensation of Plaintiff's condition from the date he completed the function report through the date of the hearing, and that the ALJ's decision, in this regard, is based on substantial evidence.

Sixth, the ALJ considered Plaintiff did not report to a medical source any of the allegations made at the hearing regarding the severity of his impairments. Tr. 13. See Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (affirming adverse credibility determination based in part on inconsistencies between claimant's assertion that she had problems concentrating due to pain medication and her never complaining to her doctors of medications' side effects).

Seventh, the ALJ considered that no treating or examining doctor indicated that Plaintiff is disabled or even that he had limitations greater than those which the ALJ included in Plaintiff's RFC. Tr. 13. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 1069) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work."). Although Dr. London reported, in October 2009, that Plaintiff was unable to work, he opined that Plaintiff would be incapacitated only 3-5 months. Tr. 225. See 20 C.F.R. ' 414.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.").

Eighth, while the record does not specifically reflect that Plaintiff, who complained of breathing difficulty, was advised to stop smoking, it was noted, in December 2009, that he smoked two and a half packs of cigarettes a day. Tr. 235. In January and February 2011, he was still smoking. Tr. 25, 261. See Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (claimant=s failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain). In conclusion, the court finds that the ALJ properly considered Plaintiff's credibility and that the ALJ's credibility determination is based on substantial evidence.

## B. Plaintiff's RFC:

Plaintiff argues the ALJ failed to take his mental limitations into consideration and failed to include mental restrictions in his RFC. The Regulations define RFC as Awhat [the claimant] can do@ despite his or her Aphysical or mental limitations.@ 20 C.F.R. ' 404.1545(a). AWhen determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant=s mental and physical impairments.@ Lauer v. Apfel, 245 F.3d 700,

703 (8th Cir. 2001). AThe ALJ must assess a claimant=s RFC based on all relevant, credible evidence in the record, >including the medical records, observations of treating physicians and others, and an individual=s own description of his limitations.=@ Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995).

To determine a claimant=s RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant=s impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant=s RFC is primarily the responsibility of the ALJ, a Aclaimant's residual functional capacity is a medical question.=@ Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that A>[s]ome medical evidence,= Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant=s >ability to function in the workplace,= Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).@ Thus, an ALJ is Arequired to consider at least some supporting evidence from a professional.@ Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) (AThe ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC.@); Eichelberger, 390 F.3d at 591.

Upon making an RFC assessment, an ALJ must first identify a claimant=s functional limitations or restrictions, and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The RFC need only include a plaintiff=s credible limitations. See Tindell v. Barnhart,

444 F.3d 1002, 1007 (8th Cir. 2006) (AThe ALJ included all of Tindell=s credible limitations in his RFC assessment, and the ALJ=s conclusions are supported by substantial evidence in the record.@).  Pursuant to this requirement, the ALJ found that Plaintiff=s subjective complaints were not credible and further determined his functional limitations, which included lifting no more than 10 pounds frequently and twenty pounds occasionally.

Although the ALJ did not include any limitations related to Plaintiff's alleged mental impairments, as discussed above, the ALJ considered the relevant evidence.  The ALJ acknowledged that Plaintiff had been diagnosed with anxiety and depression.  Indeed, the mere existence of a mental condition is not per se disabling.  See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981).  Further, the ALJ considered the record as a whole to determine whether Plaintiff had the signs or symptoms of a mental impairment.  As required by the Regulations, the ALJ considered Plaintiff's mental status examination and his medical records.  See 20 C.F.R. ' ' 404.1520a(b)(1) (signs and symptoms gleaned from mental status exam or psychiatric history and must be established by medical evidence).  Only after doing so did the ALJ conclude that Plaintiff's alleged mental impairments were not severe.

To the extent Plaintiff argues the ALJ did not give sufficient weight to Dr. Marty's reporting that Plaintiff had weakness in the areas of visual immediate memory, auditory delayed memory, and visual delayed memory, and that Plaintiff had a depressed mood, problems with receptive or expressive language ability, and blunted affect, Dr. Marty also reported, as discussed in part above, that testing showed Plaintiff had "no significant deficits in areas of cognitive and memory functioning," as his scores were in the low average, average, and high average ranges; "overall [Plaintiff had] no significant cognitive impairments"; he was only "mildly" depressed; his flow of information was logical and sequential; he had no thought disturbances; his speech

was normal; he understood instructions; and he had a GAF of 75, indicating only mild symptoms. Tr. 219-20. <u>See</u> n.3. Moreover, Dr. Marty reported, in regard to activities of daily living, Plaintiff grocery shopped and completed household chores, although he did not pay bills or cook and had to write things down. In the area of social functioning, Dr. Marty found Plaintiff was not socially isolated. In regard to his appearance and ability to care for his personal needs, Plaintiff was able to care for his personal needs. As for concentration, persistence, and pace, Dr. Marty noted Plaintiff had "some difficulty in his ability to maintain adequate attention and concentration with appropriate persistence and pace." Tr. 220. Thus, Dr. Marty did not find Plaintiff had more than mild limitations, and he did not report that Plaintiff had any episodes of decompensation.[4] The court finds, therefore, that the ALJ gave proper weight to Dr. Marty's opinion. The court further finds that substantial evidence supports both the ALJ's determination that Plaintiff did not have a severe mental impairment and his failure to include non-exertional limitations related to Plaintiff's alleged mental impairments in his RFC.

As for Plaintiff's argument that the ALJ failed to sufficiently explain why he rejected Dr. London's October 2009 opinion, the ALJ did not specifically discuss Dr. London's opinion. Any error in this regard, however, is harmless, as Dr. London's report is not inconsistent with the

_____

[4] Where an ALJ finds a claimant has a mental impairment, the ALJ is required to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. ' 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. ' 404.1520a(c)(3). The limitation in the first three functional areas of activities of daily living (social functioning and concentration, persistence, or pace) is assigned a designation of either Anone, mild, moderate, marked, [or] extreme.@ 20 C.F.R. ' 404.1520a(c)(4). The degree of limitation in regard to episodes of decompensation is determined by application of a four-point scale: A[n]one, one or two, three, four or more.@ Id. When Athe degree of [] limitation in the first three functional areas@ is Anone@ or Amild@ and Anone@ in the area of decompensation, impairments are not severe, Aunless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant=s] ability to do basic work activities.@ 20 C.F.R. ' 404.1520a(d)(1).

ALJ's RFC determination; as stated above, Dr. London reported that Plaintiff walked fairly normally, and had no abnormalities in his extremities.  To the extent Dr. London opined that Plaintiff could not work, such a decision is reserved for the Commissioner, see Davidson v. Astrue, 578 F.3d 838, 841, (8th Cir. 2009) (issue of disability reserved for Commissioner), and, in any case, Dr. London opined Plaintiff would be unable to work only 3-5 months, see 20 C.F.R. ' 414.909   (12-month duration requirement).   Dr. London's opinion regarding the duration of Plaintiff's impairments was supported when Dr. Burchett reported just several months later, in December 2009, that, despite Plaintiff's complaint of back pain, his straight leg raising was negative, he had normal range of motion in the spine, no tenderness or spasm in the back, and no evidence of neuropathy in the lower extremities.  Tr. 237.  Further, x-rays of the lumbosacral spine ordered by Dr. London showed "reasonably good" alignment, *minor* degenerative changes through the lumbar spine and *mild* narrowing at L5-S1.  Tr. 216.  See Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data).   Also, Dr. London's report was based partly on Plaintiff's subjective complaints, including Dr. London's notation that it was painful for Plaintiff to get on and off the examination table.  See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor=s opinion was based largely on the plaintiff=s subjective complaints rather than on objective medical evidence).  Finally, Dr. London was not a treating doctor, and performed only a consultive examination of Plaintiff.  See Chamberlain, 47 F.3d at 1494 (AMedical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician.@).

As for Plaintiff's allegation of back pain, the ALJ included limitations in Plaintiff's RFC which accommodated this pain to the extent the ALJ found Plaintiff's allegations credible. Thus, he limited Plaintiff to light work, and limited him to only occasionally climbing, kneeling, stooping, crouching, crawling, balancing, and being exposed to cold extremes or work with hazards. See Tindell, 444 F.3d at 1007 (ALJ need only include claimant's credible limitations in his RFC). In conclusion, the court finds that the ALJ's RFC determination, in its entirety, is supported by substantial evidence and that it is consistent with the requirements of the Regulations and case law.

After determining Plaintiff's RFC the ALJ posed a hypothetical to the VE which described a person of Plaintiff's age and education with his work history. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."); Guilliams v. Barnhart, 393 F.3d 789, 804 (8th Cir. 2005) (proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."). The VE testified that, while Plaintiff's past relevant work as a truck driver and welder is generally performed at the medium level, Plaintiff performed it at the light exertional level, and that, therefore, Plaintiff could perform his past relevant work.

While the court finds it rather incomprehensible that an individual could perform Plaintiff's past work as a truck driver or welder at the light level, and while it is questionable that Plaintiff's description of his past relevant work was light in that he was required to put chains on trucks, the VE also testified that there was other work which Plaintiff could perform and that

such work was available in significant numbers in the national economy.  See Martise, 641 F.3d at 927 (ABased on our previous conclusion ... that >the ALJ's findings of [the claimant=s] RFC are supported by substantial evidence,= we hold that >[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner=s denial of benefits.=@); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE=s testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant=s limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).  As such, the court finds that the ALJ's determination that Plaintiff was not disabled is based on substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 18,

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum and Opinion.


Dated this 2nd Day of April, 2014.


/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE